UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILLIAM DEITRICK, JR.,

                Plaintiff,

         - against -

THE GYPSY GUITAR CORP., TEYE GUITAR, LLC, and CIBOLO CAPITAL PARTNERS I, LLC,

                Defendants.

**OPINION AND ORDER**

16 Civ. 616 (ER)

---

Ramos, D.J.:

    Plaintiff William Deitrick, Jr. brings this diversity action for breach of contract, tortious interference, and unjust enrichment against Defendants The Gypsy Guitar Corporation ("Gypsy"), Teye Guitar, LLC, and Cibolo Capital Partners I, LLC ("Cibolo" or together with Teye Guitars, "the Cibolo Defendants"). Before the Court is the Cibolo Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and The Gypsy Guitar Corporation's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

    For the reasons stated below, the Cibolo Defendants' motion is GRANTED without prejudice and The Gypsy Guitar Corporation's motion is DENIED.

I. **Factual Background**[1]

Gypsy, a Tennessee corporation in the business of crafting high-end designer guitars, hired Plaintiff, a New York resident, as its exclusive agent in connection with a private placement of securities or financing or sale of its assets. Complaint (Doc. 1) at ¶ 10. The parties executed a written agreement ("Engagement Letter") on July 9, 2013, pursuant to which Plaintiff was entitled to reimbursement for all fees and expenses incurred and to receive a "Placement Fee" – both sums to be paid contemporaneously with the closing of the transaction.[2] *Id.* As an alternative to the Placement Fee, Gypsy agreed to pay Plaintiff a "Facilitation Fee," entitling Plaintiff to a percentage of both cash and the warrants of the total capital raised in any related transaction involving Gypsy and a client introduced by Plaintiff, payable "on or prior to the initial closing" of the related transaction.[3] *Id.* at ¶ 12. In addition to the fee provisions, the Engagement Letter also contained a "Non Circumvention" clause, a choice of law provision, and

---

[1] The following facts are drawn from allegations contained in the Complaint (Doc. 1), which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court can also consider Plaintiff's and the Cibolo Defendants' accompanying submissions, (Docs. 24, 48) in considering the Cibolo Defendants' Rule 12(b)(2) motion. *See SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) ("in reviewing a Rule 12(b)(2) motion, a court may consider documents beyond the pleadings in determining whether personal jurisdiction exists") (internal quotation marks omitted).

[2] The Engagement Letter also provides that Plaintiff was hired as Gypsy's exclusive agent "in a private placement of up to $3,000,000 or more of debt and/or equity securities . . . of issuer, in one or more related transactions (the "Private Placement") to one or more accredited investors . . . [Gypsy] and Issuer understand that [Plaintiff] cannot and does not guarantee that it will be able to successfully complete the [transaction] or raise capital for Issuer." Engagement Letter (Doc. 1, Ex. A), at ¶ 1.

[3] Specifically, the Facilitation Fee provides that if Gypsy or any of its affiliates "directly or indirectly enters into or participates in any transaction or series of transactions identical or similar to the Potential Transaction [*i.e.* the Private Placement] or otherwise directly or indirectly sells or finances all or any of its related assets ["Related Transaction"] with any [of Plaintiff's clients] in respect of which [Plaintiff] is not acting, and being compensated, pursuant to an agreement executed and delivered by [Plaintiff]," Plaintiff is entitled to receive "10% cash plus 10% warrants of the total capital raised," on or prior to the initial closing of a Related Transaction. The provision also states that Plaintiff is not entitled to the Facilitation Fee if Plaintiff is entitled to the Placement Fee. Engagement Letter at ¶ 3(e).

a forum selection clause. Engagement Letter (Doc. 1, Ex. A), at ¶ 7. The Non Circumvention Clause prohibited Gypsy from dealing directly with parties introduced to it by Plaintiff absent Plaintiff's written consent. *Id.* Together, the choice of law and forum selection provisions provided that any claims or causes of action arising from the Engagement Letter would be governed by the laws of the State of New York and that they would "irrevocably submit" to the jurisdiction of any court in the State of New York, including the District Court for the Southern District of New York. *Id.* at ¶ 10. By its terms, the Engagement Letter automatically renewed for additional 12 month periods until Gypsy delivered written notice stating that the term would not be renewed. Plaintiff claims that Gypsy has not provided him with written notice of its desire to terminate the agreement, and thus claims that the Engagement Letter is still in effect. Complaint at ¶ 15.

Acting pursuant to the Engagement Letter, Plaintiff prepared an eighty-one page offering memorandum, financial models, and a due diligence folder. *Id.* at ¶ 16. Plaintiff also traveled extensively to meet with investors on behalf of Gypsy, including Cibolo, a private equity investor in Texas. *Id.* at ¶¶ 5, 16. After Cibolo expressed interest in Gypsy, Plaintiff and Cibolo entered into a nondisclosure agreement ("Nondisclosure Agreement") to allow Cibolo to review Plaintiff's offering materials. *Id.* at ¶ 17. In pertinent part, the Nondisclosure Agreement, dated September 10, 2013, provided that Cibolo or any of its affiliates could not deal directly with Gypsy without Plaintiff's written consent.[4] *Id.* at ¶ 18. After the parties signed the Nondisclosure Agreement, Cibolo entered into due diligence discussions with Plaintiff and Gypsy regarding the investment. *Id.* Plaintiff alleges that sometime thereafter, Win Purifoy, a

---

[4] The Nondisclosure Agreement also included choice of law and forum selection clauses identical to those in the Engagement Letter. Nondisclosure Agreement (Doc. 1, Ex. B) at ¶ 12.

manager at Cibolo, instructed Gypsy to exclude Plaintiff from the negotiations. *Id.* at ¶ 19. Plaintiff claims that he was not informed of this instruction and that he did not consent to the communication between Gypsy and Cibolo, but that despite his repeated requests, Cibolo and Gypsy continued their discussions without involving him. *Id.* at ¶ 20. Plaintiff claims that, prior to his exclusion, he expended approximately $30,000 in business expenses in connection with the proposed transaction between Cibolo and Gypsy. *Id.* at ¶ 30.

On October 10, 2013, Cibolo formed Cibolo Guitar Partners, which in turn, formed Teye Guitars, LLC ("TG").[5] *Id.* at ¶ 21. On October 18, 2013, without Plaintiff's consent, Gypsy and TG executed an Asset Purchase Agreement (the "APA"), by which TG agreed to purchase the properties, rights, and assets used or useful in connection with Gypsy's design and construction of guitars. *Id.* at ¶ 23. TG also agreed to assume certain obligations and liabilities as of the closing date ("Assumed Contracts"), but provided that it would not be liable for obligations resulting from the listed excluded assets or contracts.[6] Asset Purchase Agreement (Doc. 1, Ex. C), at ¶ 1.3(a) & (b). Gypsy and TG also agreed to pay Plaintiff, at closing, a brokerage fee of $120,000 plus 2.2222% fully-diluted ownership in TG. Complaint at ¶ 24.

That same day, on October 18, 2013, Gypsy and TG executed a Promissory Note & Security Agreement ("Promissory Note"), whereby TG lent $125,000 to Gypsy and its creative director, Teije Wijnterp, and CEO, Evert Wilbrink, to pay the obligations owed to Plaintiff (not

---

[5] Pursuant to a Settlement Agreement between Teye Guitar, LLC and Cibolo Capital Partners I, LLC, Teye Guitar, LLC has since changed its name to TG, LLC. Accordingly, the Court will refer to Teye Guitar, LLC as "TG."

[6] The term "Assumed Contracts" is used in the APA to describe the obligations and liabilities assumed by TG. As indicated by the "List of Exhibits and Schedules," the APA included a schedule of the "Assumed Contracts," as well as the "Excluded Contracts" and the "Seller's Liabilities Paid at Closing." *See* Asset Purchase Agreement . However, because Plaintiff did not file the actual schedules with the APA, the Court cannot determine what contracts and liabilities were included (or excluded) pursuant to the defined terms.

to exceed $50,000) and specific working capital needs. *Id.* at ¶ 25. Wilbrink also entered into a separate employment agreement (also on October 18) to become the Chief Operating Officer and Director of Business Development at TG.[7] *Id.* at ¶ 26. On October 30, 2013, TG and Cibolo investors, Sanjay Chandra and TAFLUMA Partners, L.P., executed a Commercial Loan Agreement & Promissory Note ("Commercial Agreement") in which they agreed to loan TG $800,000 to pay its obligations, including those TG assumed when it acquired the assets of Gypsy, and approximately $38,000 to Plaintiff. *Id.* at ¶ 27. On April 1, 2014, Wijnterp signed an employment agreement to become the Chief Executive Officer and Chief Creative Director of TG.[8] *Id.* at ¶ 28.

Approximately eight months later, on December 3, 2014, Plaintiff, through his attorneys, submitted a demand letter to Gypsy and TG seeking the money owed to him pursuant to the Engagement Letter. *Id.* at ¶ 32. Three weeks later, on December 24, Gypsy responded to the request, claiming that it did not owe Plaintiff any fees. TG did not respond to Plaintiff's request. *Id.* at ¶ 33. Plaintiff sent a second demand letter to Gypsy on February 9, 2015, however Gypsy never responded. *Id.* at ¶ 34.

On December 31, 2014, Gypsy and TG entered into a Settlement Agreement, providing, in pertinent part, that the parties never consummated the purchase transaction contemplated in the APA. It also stated that the "parties desire[d] to continue their business activities separate from each other and to resolve all claims related to the course of dealing which took place during

---

[7] Wilbrink's employment agreement was contingent on "the consummation of the transaction contemplated by the APA and, if the APA is terminated prior to consummation of the transctions contemplated thereby, then this Agreement shall be null and void and of no force or effect." Employment Agreement (Doc. 1, Ex. D).

[8] Wijnterp's employment agreement was similarly contingent on the consummation of the transactions pursuant to the APA. Employment Agreement (Doc. 1, Ex. F).

5

the failed [purchase transaction]." Declaration of Win Purifoy (Doc. 24), Ex. A. The parties also agreed to release each other "from all claims of every description, other than claims arising out" of the Settlement Agreement and to void any agreements entered into prior to the date of the Settlement Agreement. *Id.*

## II. Procedural History

On December 1, 2015, Plaintiff brought an action in New York Supreme Court against Defendants seeking to recover monetary damages pursuant to the Engagement Letter. (Doc. 1) Defendants removed the action to the Southern District of New York on the basis of diversity jurisdiction on January 27, 2016. *Id.* On February 3, 2016, the Cibolo Defendants filed a letter with the Court requesting a pre-motion conference to seek leave to file a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). (Doc. 8) The Court granted the Cibolo Defendants' request and ordered the parties to appear for a pre-motion conference on February 23, 2016. (Doc. 11) At the conference, the Court granted the Cibolo Defendants' application for leave to file their motion and directed them to file a copy of the Settlement Agreement between Gypsy and TG – which they filed on March 4, 2016. (Doc. 21) On March 11, 2016, the Cibolo Defendants filed the instant motion to dismiss for lack of personal jurisdiction. (Doc. 22) Three days later, counsel for Gypsy filed a letter with the Court requesting a pre-motion conference seeking leave to file a motion to dismiss. (Doc. 25) The Court granted Gypsy's application for leave and directed Plaintiff to file a consolidated opposition in response to both motions. (Doc. 28) Gypsy filed the instant motion to dismiss on August 11, 2016. (Doc. 39)

### III. <u>Legal Standards</u>

#### A. <u>Rule 12(b)(2) Motion to Dismiss:  Lack of Personal Jurisdiction</u>

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  To meet this burden, the plaintiff must plead facts sufficient for a prima facie showing of jurisdiction.  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  The court construes all of the plaintiff's allegations as true and resolves all doubts in its favor.  *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008); *Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012)).  "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'"  *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 185 (2d Cir. 1998)).  As stated, courts may rely on additional materials outside the pleading when ruling on 12(b)(2) motions.  *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, No. 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); *Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008).

### B. Rule 12(b)(6) Motion to Dismiss:  General Legal Standard

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## IV.  Discussion

### A. Personal Jurisdiction

In diversity or federal question cases, personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits.  *Whitaker*, 261 F.3d at 208 (2d Cir. 2001) (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997)).  This determination involves a two-step analysis.  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).  In New York, the Court must first determine whether personal jurisdiction is appropriate pursuant to the State's general jurisdiction statute, Civil Practice Law and Rules

("C.P.L.R.") § 301, or its long-arm jurisdiction statute, C.P.L.R. § 302(a). If and only if the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the second step is an evaluation of whether the Court's exercise of personal jurisdiction comports with the Fifth Amendment Due Process Clause of the United States Constitution. *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007). Where, as here, the court does not conduct an evidentiary hearing, a plaintiff need only allege facts sufficient for a *prima facie* showing of jurisdiction. *See M. Shanken Commc'ns, Inc. v. Variant Events, LLC*, No. 10 Civ. 4747 (CM), 2010 WL 4159476, at *3 (S.D.N.Y. Oct. 7, 2010) (citing *DiStefano v. Carozzi N.A., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)).

Plaintiff argues that the Court may assert personal jurisdiction over Cibolo and TG pursuant to New York's long arm statute: N.Y.C.P.L.R. § 302(a). Under Section 302(a), a court may exercise personal jurisdiction over any non-domiciliary who, either in person or through an agent: (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state;" (2) "commits a tortious act within the state . . . ;" or (3) "commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y.C.P.L.R. § 302(a)(1)-(3). Plaintiff argues that TG is subject to the Court's jurisdiction under § 302(a)(1) and Cibolo is subject to jurisdiction under § 302(a)(3).

i. **Section 302(a)(1)**

Under § 302(a)(1), a court examines "(1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines*, 490 F.3d at 246 (citing *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 850 N.E.2d 1140, 1142 (2006)).

A defendant transacts business within the meaning of § 302(a)(1) when it purposefully "avails itself of the privilege of conducting activities [in New York], thus invoking the benefits and protections of its laws." *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 229 N.E.2d 604, 607 (1967)). Section 302(a)(1) is a "single act" statute: "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (1988) (citations omitted).

For a cause of action to arise from the defendant's business transaction in the state, there must be "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Saudi v. Marine Atl., Ltd.*, 306 F. App'x 653, 654 (2d Cir. 2009) (citing *Henderson v. INS,* 157 F.3d 106, 123 (2d Cir. 1998)). "To determine whether a sufficient nexus exists, a court must evaluate the 'totality of the circumstances surrounding defendants' activities in New York in connection with the matter giving rise to the lawsuit.'" *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir. 1997) (quoting *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 60 (2d Cir. 1985)).

Here, Plaintiff asserts that TG transacts business in New York "by using multiple guitar retailers in New York, including Sam Ash, to sell its guitars." Memorandum of Law in

Opposition to Defendant Cibolo Capital Partners I, LLC's and Defendant Teye Guitars, LLC's Motion to Dismiss ("Pl. Juris. Opp.") (Doc. 47) at 13.  In the alternative, Plaintiff claims that TG is subject to the forum selection clause in the Engagement Letter because it assumed Gypsy's obligations and liabilities upon execution of the APA.  *Id.* at 13-14.  The Cibolo Defendants argue that TG has no business in New York at all and that, even assuming that it did sell guitars via its retailers, this activity has no relationship with the claims in the instant action. Memorandum of Law in Support of Defendant Cibolo Capital Partners I, LLC's and Defendant Teye Guitars, LLC's Motion to Dismiss ("Def. Juris. Memo.") (Doc. 23) at 10.

The Court agrees with the Cibolo Defendants.  Nothing in the record indicates that TG had or did any business in New York.  TG was formed in Texas and maintains its principal place of business in Texas.[9]  Plaintiff's conclusory claim that TG sells guitars through retailers in New York is insufficient for a *prima facie* showing of jurisdiction.  *See. e.g*, *Klutz v. Yagoozon, Inc.*, No. 16 Civ. 4538 (JSR), 2016 WL 5806902, at *2 (S.D.N.Y. Sept. 20, 2016) ("Plaintiff's conclusory allegation [that defendant did business in New York] is insufficient to establish personal jurisdiction"); *Merritt v. Airbus Americas, Inc.*, No. 15 Civ. 05937, 2016 WL 4483623, at *2 (E.D.N.Y. Aug. 22, 2016) ("Plaintiff's allegations in the Amended Complaint that [defendant] 'regularly conducts business in the State of New York' is no more than a legal conclusion insufficient on its own to establish jurisdiction.") (internal citation omitted).  Even assuming that Plaintiff's allegation that TG sold guitars in New York is sufficient for a *prima facie* showing, Plaintiff makes no attempt to assert an "articulable nexus" between TG's guitar sales and Plaintiff's claim to recover for breach of the Engagement Letter.

---

[9] Further, the APA entered into between TG and Gypsy was executed in Texas and is governed by the laws of Texas.

Plaintiff's claim that TG is subject to the terms of the Engagement Letter because it assumed Gypsy's obligations and liabilities is similarly unavailing. As the Cibolo Defendants note, it is unclear whether the Engagement Letter, which defines Gypsy's obligations to Plaintiff, was listed as an Assumed Contract. However, even assuming that TG assumed those obligations, the APA explicitly states that the assumption of liabilities would occur as of the closing date of the transaction. The Settlement Agreement between TG and Gypsy – executed before Plaintiff filed this suit – explicitly states that the transaction contemplated in the APA never closed and that they would operate as independent entities. Thus, the Court finds that, on the record before it, Plaintiff has not pled sufficient facts to show that the forum selection clause of the Engagement Letter can be enforced against TG.[10]

Accordingly, TG's motion to dismiss for lack of personal jurisdiction is GRANTED without prejudice.

### ii.  Section 302(a)(3)

Plaintiff argues that the Court has personal jurisdiction over Cibolo pursuant to Section 302(a)(3). Under C.P.L.R. § 302(a)(3), a court may exercise personal jurisdiction over any non-domiciliary who, either in person or through an agent: "commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue

---

[10] Plaintiff attempts to circumvent the Settlement Agreement by claiming that the execution of the APA, and the subsequent agreements, by Gypsy and TG constitute a "de facto merger," and as such TG assumed Gypsy's liabilities upon the execution of those documents. Pl. Juris. Memo at 13-14. However, the Settlement Agreement between the parties explicitly states that because the transaction never closed, TG was required to cease all use of Gypsy's intellectual property and to return all guitar making tools and other items. Further, the parties also agreed to void any agreement made by the parties prior to the date of the execution of the Settlement Agreement.

from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y.C.P.L.R. § 302(a)(3). The New York Court of Appeals has identified five elements a plaintiff must show to establish personal jurisdiction under Section 302(a)(3)(ii): "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce." *See Miller Inv. Trust v. Xiangchi Chen*, 967 F. Supp. 2d 686, 694 (S.D.N.Y. 2013) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302 (2011)). Plaintiff claims that Cibolo's tortious interference with his Engagement Letter with Gypsy caused injury to Plaintiff in New York, in that Plaintiff was deprived of compensation in New York, pursuant to an agreement governed by New York law. Plaintiff also asserts that Cibolo derives substantial revenue from interstate commerce. Pl. Juris. Opp. at 11.

To show that his financial injury is sufficient to satisfy Section 302(a)(3), Plaintiff relies on *Nat'l Westminster Bank PLC v. Ret. Care. Assocs.*, No. 98 Civ. 6023 (JSM), 1999 WL 239677, at *3 (S.D.N.Y. Apr. 23, 1999), a case in which the plaintiff, a New York company, executed an agreement with Retirement Healthcare Associates ("RHA") to act as a financial advisor to RHA in a proposed merger with Sun Healthcare Group ("SHG"). *Id.* at *1. Pursuant to the agreement, plaintiff was to receive $2,393,300 upon consummation of the merger. After the companies successfully merged, plaintiff sought payment of the fee. Because neither RHA nor SHG paid plaintiff, plaintiff filed suit alleging breach of contract and tortious interference. *Id.* at *2.

Defendants in that case argued that the Court did not have personal jurisdiction over RHA and SHG because, among other things, the only injuries plaintiff suffered in New York were financial losses and resulted solely by virtue of plaintiff's residence in New York. *Id.* at *3. The Court rejected defendants' argument holding that by allegedly interfering with the engagement agreement between RHA and plaintiff, SHG knew that "its actions were directed at avoiding a financial obligation to a New York entity under a contract that was partially executed in New York and should have expected that its actions would cause financial loss in New York." *Id.*

Here, as in *Nat'l Westminster*, Plaintiff's alleged injury is financial loss, which occurred in New York, for services that he rendered pursuant to a contract partially executed in New York and governed by New York law. Plaintiff has also sufficiently alleged that Cibolo, by interfering with the Engagement Letter, knew that its actions were directed at "avoiding a financial obligation to a New York entity." Cibolo was well aware, via a similar non-circumvention provision in the Nondisclosure Agreement, that Gypsy and Cibolo could not communicate directly absent Plaintiff's consent. Moreover, even if Cibolo was not aware of the choice of law and forum selection provisions in the Engagement Letter, the identical provision in the Nondisclosure Agreement, at the very least, gave Cibolo notice that the transaction would be subject to the laws of New York in a New York forum. Though the Cibolo Defendants attempt to distinguish *Nat'l Westminister* by claiming that SHG had an *existing* and concrete obligation to pay plaintiff, while here, Plaintiff's claim to a fee is disputed, the Court is unpersuaded. Taking Plaintiff's allegations as true, Plaintiff has sufficiently alleged that he was injured as a result of Cibolo's interference with the Engagement Letter and that Cibolo should have reasonably expected that its actions would have consequences in New York.

14

Nevertheless, Plaintiff fails to meet his burden of establishing personal jurisdiction over Cibolo under Section 302(a)(3) because Plaintiff does not make a *prima facie* showing that Cibolo derives substantial revenue from interstate or international commerce. Though no bright-line rule exists regarding the amount at which revenue becomes "substantial" for purposes of Section 302(a)(3)(ii), courts generally will assess either (1) the percentage of a party's overall revenue derived from interstate commerce, or (2) the absolute revenue generated by a defendant's interstate commerce activities. *See Light v. Taylor*, No. 05 Civ. 5003 (WHP), 2007 WL 274798, at *4 (S.D.N.Y. Jan. 29, 2007). Here, Plaintiff has put forth no evidence to establish where Cibolo derives its revenue from. Plaintiff's mere conclusory statement – tracking the language of the required showing – is insufficient to meet his burden. *See Richtone Design Grp. L.L.C. v. Classical Pilates, Inc.*, No. 06 CIV. 0547 (NRB), 2006 WL 2588135, at *3 (S.D.N.Y. Aug. 21, 2006) (holding that plaintiff's conclusory allegation challenging defendant's claim that it did not receive substantial revenue from interstate commerce was insufficient to make a *prima facie* showing); *see also Senese v. Hindle*, No. 11 Civ. 0072 (RJD), 2011 WL 4536955, at *13 (E.D.N.Y. Sept. 9, 2011), *report and recommendation adopted*, 2011 WL 4529359 (E.D.N.Y. Sept. 28, 2011) (finding plaintiff's conclusory allegation that defendant "actively solicited" funds from New York was insufficient to establish that defendant derived substantial revenue from interstate commerce).

Accordingly, Cibolo's motion to dismiss for lack of personal jurisdiction is GRANTED without prejudice.

B. **Plaintiff Has Alleged Sufficient Facts to State a Claim for Breach of Contract and Unjust Enrichment Against Gypsy**

   i. **Breach of Contract**

Plaintiff asserts a breach of contract claim against Gypsy. For Plaintiff to prevail on the claim in New York, he must allege (1) the existence of a contract; (2) performance of the contract by Plaintiff; (3) Gypsy's breach of the contract; and (4) damages. *Oppenheimer & Co. v. Trans Energy, Inc.*, 946 F. Supp. 2d 343, 348 (S.D.N.Y. 2013). Here, Plaintiff asserts that Gypsy has breached the Engagement Letter – which he attaches – and that because he prepared the offering materials as required by the Engagement Letter, Plaintiff is entitled to recover pursuant to the Non Circumvention Clause, Placement Fee, and/or the Facilitation Fee clauses. Memorandum of Law in Opposition to Defendant The Gypsy Guitar Corp.'s Motion to Dismiss ("Pl. Gypsy Opp.") (Doc. 46) at 10-11. Gypsy claims that pursuant to the Engagement Letter, it was only required to pay Plaintiff upon or after closing. Plaintiff is therefore not entitled to any payment because the transaction between Gypsy and TG never closed. Memorandum of Law in Support of Motion to Dismiss (Doc. 43) ("Gypsy Memo") at 6.

Under New York law, "if an agreement is complete, clear and unambiguous on its face, it must be enforced according to the plain meaning of its terms." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004); *see also In re Lehman Bros. Inc.*, No. 11 Civ. 6053 (KBF), 478 B.R. 570, 586 (S.D.N.Y. 2012) ("A written contract must be interpreted according to the parties' intent, which is "derived from the plain meaning of the language employed in the agreements.").

The Court finds that Plaintiff has alleged sufficient facts, which taken as true, show that Gypsy breached the Engagement Letter. Here, Plaintiff alleges that Gypsy directly

16

communicated with Cibolo without Plaintiff's consent and despite his disapproval and numerous requests to be included. He also asserts that he is entitled to the Placement Fee or the Facilitation Fee because Gypsy executed the APA, Security Agreement, employment agreements, and the commercial loan. Plaintiff alleges that these contracts constitute either a "Private Placement" or a "Related Transaction" as described in the Engagement Letter. Though Plaintiff acknowledges that his recovery of a Placement Fee might be barred because the transaction between Gypsy and TG never closed, he correctly notes that Gypsy does not address his potential recovery as a result of its's breach of the Non Circumvention clause and the Facilitation Fee – neither of which are contingent on the actual closing of the transaction.

In the alternative, Gypsy also argues that the Engagement Letter is unenforceable because Plaintiff failed to plead that he was a registered broker as required by Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act").[11] Gypsy Memo at 7. Assuming that Gypsy is attempting to assert an affirmative defense of illegality[12] in order to void the Engagement Letter, the burden is on Gypsy to prove the elements of the defense. *Barton Grp., Inc. v. NCR Corp.*, 796 F. Supp. 2d 473, 498 (S.D.N.Y. 2011), *aff'd*, 476 F. App'x 275 (2d Cir. 2012) ("[A] defendant asserting an affirmative defense bears the burden of proof with respect to that defense."). Section 15(a)(1) of the Exchange Act provides that it "shall be unlawful for any

---

[11] Gypsy claims that because Plaintiff violated Section 15(a)(1), the Engagement Letter can be voided pursuant to Section 29(b), which provides that "[e]very contract made in violation of any provisions of this Chapter . . . shall be void . . . as regards the rights of any person who, in violation of any such provision or rule, or regulation, shall have made or engaged in the performance of any such contract." 15 U.S.C. § 78(cc).

[12] In the cases on which Gypsy relies, the party is asserting an affirmative claim (or counterclaim) for rescission of a contract because of an alleged violation of the Exchange Act. However, any attempt by Gypsy to assert a counterclaim against Plaintiff would be improper since it did not assert the claim in its pleadings. *See Empresa Cubana del Tabaco v. Culbro Corp.*, 541 F.3d 476, 479 (2d Cir. 2008) (noting that an issue was not properly before district court where defendant failed to raise the issue as a counterclaim).

broker or dealer . . . to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered in accordance with" the Exchange Act.  15 U.S.C. § 78o(a)(1).  Here, even if Gypsy can show that Plaintiff was acting as a broker, Gypsy does not – and cannot at this stage – provide sufficient evidence to show either that Plaintiff was unregistered or that he was not affiliated with a licensed broker.

Accordingly, Gypsy's motion to dismiss the breach of contract claim is DENIED.

### ii.  Unjust Enrichment

Gypsy argues that Plaintiff is not entitled to assert a claim for unjust enrichment because Plaintiff alleges the existence of an enforceable contract.  Gypsy Memo at 12.  Under New York law, to state a claim for unjust enrichment, a plaintiff must allege (1) "that the defendant was enriched at the plaintiff's expense" and (2) "that equity and good conscience require the plaintiff to recover the enrichment from the defendant."  *Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009) (internal citations omitted).  A claim for unjust enrichment sounds in quasi-contract and cannot lie where an enforceable contract governs the disputed matter.  *See Ohio Players, Inc. v. Polygram Records, Inc.*, No. 99 Civ. 33 (KTD), 2000 WL 1616999, at *4 (S.D.N.Y. Oct. 27, 2000).  "When there is a bona fide dispute as to the existence of a contract, a party may proceed upon a theory of unjust enrichment, and an unjust enrichment claim may be alleged alongside a breach of contract claim."  *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007).

Here, while Plaintiff's unjust enrichment claim is derived from the same facts as his breach of contract claim, the Court finds that Plaintiff has alleged sufficient facts to state a claim for unjust enrichment.  Because Gypsy contests the validity and enforceability of the

Engagement Letter, Plaintiff is entitled to assert unjust enrichment as an alternative pleading. *See e.g., Willman V. Zelman & Assocs., LLC*, No. 11 Civ. 1216 (KBF), 2012 WL 811512, at *5 (S.D.N.Y. Mar. 12, 2012) ("[S]ince defendants deny that they had a contract, or owe damages, the Court is unwilling to toss out one claim when another theory might prove to be the more appropriate at a later stage as discovery proceeds.").

Accordingly, Gypsy's motion to dismiss Plaintiff's unjust enrichment claim is DENIED.

## V. Conclusion

For the reasons set forth above, the Cibolo's motion to dismiss is GRANTED without prejudice and Gypsy's motion to dismiss is DENIED. The Clerk of Court is respectfully directed to terminate the motions, Docs. 22, 39, 40, and to terminate Teye Guitars, LLC and Cibolo Capital Partners I, LLC as defendants in this action.

It is SO ORDERED.

Dated:   December 28, 2016
         New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.